The first case on the call of the docket this morning is Agenda No. 18, No. 127997, Darlene Kloeppel v. Champaign County Board, Mr. James P. Harvey. And we have someone on Zoom, I didn't forget you, but you'll be called. Thank you. You may begin. May it please the Court, my name is James Harvey and I represent the appellant, Darlene Kloeppel, the County Executive of Champaign County. While the parties in this case are Darlene Kloeppel, the Champaign County Executive, and the Champaign County Board, this case, distilled to its essence, is really about respecting and upholding the decision of the voters of Champaign County on November 6, 2016, when they voted to depart from the County Board form of government and adopt the County Executive form of government. And those aren't my words, those are the words of the Honorable Jason Boehm, ruling on behalf of Darlene Kloeppel in a summary judgment order of January 15, 2021. And whereas up to that point, Champaign County had governed themselves under the County Board form of government, which the County Form Board of Government comprises both the legislative function and the executive function. Once that referendum was adopted by the voters of Champaign County, the executive function departed and was placed upon the election in 2018 of Darlene Kloeppel into an independent County Executive branch of government. Whereas prior to that time, basically the County Board wore two hats. They of course are the legislative branch of government, but they also supervised and administered the departments, whether it's animal control, highway, health department, whatever departments were under the County Board in terms of departments. And so once this historic event took place and the Champaign County voters elected the County Executive, we now had an independent constitutional officer as per the Illinois Constitution and the County Executive statute, which as you know, the County Executive statute is part of the county's code. What happened subsequently in Champaign is there were vacancies. Just how it happened to occur, there are a number of resignations, County Board members moving, and there was also a vacancy in the county-wide office of treasurer. So then you have a vacancy that has to be filled until the next election. What happened in Champaign County was that not Darlene Kloeppel, the elected County Executive, got to appoint that person. And we say appoint when you look at the statute and you look at how it works. When you have these vacancies in county-wide office or county board office, it's truly not an appointment because it doesn't get accomplished unless the advice and consent of the County Board comes forward. So let me ask you a question. Can you tell me where in either the election code or the County Executive law where it says that the County Executive can appoint to fill vacancies in elected county offices? What language is that? The County Executive statute doesn't talk about elected offices. It doesn't distinguish in the appointment section, as you're aware. It talks about appointments to boards, commissions, etc. You agree that is not the same as elected offices? Well, they're different, surely, because an elective office is something that there's a vacancy, and if it doesn't get filled, the voters decide to fill it at the next election. But in terms of the County Executive being the appointing entity, I would say that it's a true, independent, constitutional office similar to a governor or a president when they nominate. And that's what they do in this case. Are you asking us to fill in a legislative gap? I mean, there's a gap here from what you're saying. Because the County Executive can, with the advice and consent of the board, appoint to various boards and commissions. You've conceded that that doesn't include county treasurer, coroner, all those things. That isn't included in that. So there's no statutory grant of authority under the County Executive Act. But, I mean, there is a specific provision in the Election Code, 2511, that talks about any elective county office. So why wouldn't we apply the more specific statute as opposed to us taking it upon ourselves and filling in the gap in the County Executive Act? And that's sort of the challenge in this case, because the Election Code does deal with those elected vacancies. However, it talks about, as you know, Justice Burke, it talks about a county board chair or chairman. And that is part of the county's code going back to over 100 years, because the county's code is over 100 years old. It was enacted way before the county executive statute, which is fairly recent. And there is a need to do some interpretation in terms of having the county executive fit into that statute under the Election Code. Because there is no county chair once you adopt the executive form of government. So how do you interpret it? It is a challenge. If you talk about interpretation, isn't there a difference between interpretation and us basically writing a statute, filling in the gap, us rewriting the statute? I know you're the judicial branch, not the legislative branch, so I understand that. And truly, it is a matter of interpretation. The county executive is not asking you to legislate, because that's not your role. And that's not what we ask for in our briefs and in our arguments. Counsel, Section 2511 of the Election Code specifically gives the power to appoint the elected officials to the board chair, right? Correct. And the executive is not the board chair.  You stated that there is no longer a board chair. Is it more accurate to say there is no longer an elected board chair? Well, in Champaign County, the chair is elected by fellow county board members, as opposed to Cook County, where the chair is elected county-wide. We're talking about not a chair elected by the citizens, not a county board chair elected by the citizens. Right, because in Champaign County, how it operated before the referendum and how it operated after the referendum is you have county board districts, and the person who leads the county board is elected by fellow county board members, not the electorate. So, you know, the fellow county board members elect one of themselves to be chair. Doesn't it seem like the appellate court here appointed the chair of the county board, which really is a non-existent position, because Champaign County now has an office of executive, so there's no real county board chair any longer in the authority in Champaign County. So the appellate court seemed to, like I say, there was no position, a chair created and defined by the statute, so it's non-existent. Yeah, it's a little tricky, and that's why... Well, then if that's it by default, if there's not an existent spot, then it seems to me to avoid kind of an absurd result that the appointment power lies with the county executive. Did you say... It would be absurd to appoint somebody in a position that doesn't exist or have them make appointments. Right, and that's why, you know, as opposed to the appellate court, Judge Baum interpreted the statute like he did in saying, well, how do you make sense out of this, because in Champaign County, even after the election of Darlene Kleppel, they continued to call the person who leads the county board a chair. But the position does exist. It still exists. Is that correct? I mean, you just said there is still a county board chair that's selected by fellow members of the county board. Right, but it is not a chair I would submit under the existing governance of Champaign County once you adopt the executive form of government. If you look at that statute, there is no chair. And in fact, in Will County, where they adopted that form of government in 1988 and relied on advice from counsel like, where do we go and how do we call these people, because there was some confusion about the chair of the executive committee. After researching county executives nationally, it was stated in the memorandum advising the Will County State's Attorney and County Board in 2005 that there simply isn't a chair once you adopt the county executive form of government. You can call it. Counsel, I'm confused. So the people elect members to the county board? Correct. And then the county board members choose one of them to lead? Correct. That's called the chair? Well, in Champaign County, they continued to do that after the county executive was elected. After they passed the referendum in 2016 and then elected Darlene Kleppel in 2018, they continued to use that. Contrast that with the only county executive form of government that existed beforehand, Will County, where in 1988 the voters adopted that form. And there was an issue similar, and based on advice of counsel, they called that person for clarity a leader or speaker. But as Judge Baum said in his decision, you can call yourself the chair, but you're not the executive who appoints, vetoes, proposes a budget, does all the things that the county executive statute empowers you. So you can call yourself a chair, but the chair went out the window when the voters adopted the county executive form of government. You know, we've been focusing on specifically the section of the county code that talks about the authority of the county executive to appoint. I have to be honest, I've not read the rest of the whole section of the code. So you're saying the board has no authority to propose legislation, that all power is in the executive and it's only the role of the board to give advice and consent? No, if I presented it that way, I apologize, because that's not the case. After you adopt the county executive form of government, the county board continues to be what it was before the referendum was adopted, the legislative branch of government. And in fact, they have to work together to get any appointments done, because even in Will County, where it's been operating for over 30 years, all the county executive can do is nominate somebody. Nothing gets affirmed. No one fills that vacancy unless the county board ratifies it. They still are the ones that adopt the budget. Under the county executive statute, the county executive merely proposes a budget, which the old county chair used to do before the county adopted a county executive form of government. So instead of the county board wearing the legislative hat and wearing the executive hat, they keep the legislative power, which is a lot of power. They control the power of the perks. The county executive proposes a budget, but not a nickel gets spent unless the county board adopts that budget. So they don't lose... Under your understanding of all of this, whether we call it chair or leader or whatever other term we're going to use, what authority does that person have who's been chosen by the other members of the board? I don't know if I understand the question. I'd call it the chair. Okay. The person who we've been calling the chair of the board, has been elected to the board and then chosen to lead the board by the other members, right? Sounds like a chair. That's how the term has been used in the past. What authority does that person continue to have? Well, in terms of the county executive statute, not all that much. Because under the county executive statute, it's the county executive now, which previously was the county board chair, presides over the meetings, can veto, can propose a budget, can hire employees. Can actually do one appointment without the county board approving it, and that's appoint legal counsel. Because under that statute, the county executive is entitled to its own legal counsel without requiring confirmation by the county board. Is it true that the 55 ILCS 5-2 gives the duties and powers of the county executive? And it says, any county executive elected under this division shall appoint, with the advice and consent of the board, meaning the county board, persons to serve on the various boards and commissions to which appointments are provided by law and made by the board. And then the election code says, when the vacancy occurs in any elective or county office, the county board shall declare that there's a vacancy. Notification shall be given to the county central committee, county board of each established party within three days of the occurrence. The vacancy shall be filled within 60 days by appointment of the chair of the county board. So it looks to me that the county executive appoints somebody, sends it to the county board, the county board handles it from there. That's correct. And the county executive can't get one person appointed other than legal counsel, because that's an exception in the county executive statute. They can't get, you know, one vacant county board seat filled, one, let's say the treasurer, what happened both in Will and Champaign County, without getting that confirmation from the county board. So if they don't work together, that seat stays vacant. And that's still the county board's prerogative. If your client resigned, who would appoint or replace them? It would be the county board. It happened in Will County. Larry Walsh, the county executive, passed away. The speaker of the county board, Denise Winfrey, was then appointed by the county board, because under the statute, there's no deputy county executive. It's sort of a bit of a gap, because when Mr. Walsh passed away, there was no deputy to have those powers flow to. It was truly empty. And the county board, by default, had to fill that seat, and it did so with Denise Winfrey, who served to the end of Mr. Walsh's term. But then there was an election? I mean, was there an election? Then there was an election. Jennifer Pertino was then elected in the next election. She's the current county board executive. But there was that gap, and the county board had to fill it. And the county board had the authority to fill that position? I don't see who else would, because there's no county executive to appoint, and so they elected the previous speaker. We didn't call her chair. We called her speaker. She led the county board. She took over as a fully empowered county executive, served to the end of Mr. Walsh's term, and then they had to replace her office as speaker by themselves, because they wanted a speaker, somebody to lead the county board, the legislative branch of Will County government. Thank you. Thank you. Now with us today is Carrie Lynn Krafthafer. Is that how to say your name, Carrie Lynn? Krafthafer. Okay, thank you. You may proceed. Thank you. Good morning. May it please the court, Carrie Lynn Krafthafer on behalf of the FLE, the Champaign County Board. First, I would like to thank the court for allowing me to participate remotely. This permitted me to honor a longstanding, prior existing commitment, and I appreciate it. The county executive's position is incorrect for several reasons. First of all, courts interpret statutory language as written when possible. And section 25-11 of the election code addresses the exact issue at par in this case, which is that it prescribes who fills vacancies in elective county office. The County Executive Act, which is a small act within the whole county's code, says nothing about that topic at all. Now, within the powers of the county executive, section 2-5009 sub D does say that the county executive appoints persons to serve on various boards and commissions to which appointments are provided by law to be made by the board. The county board is not appointed by the county board. The county board is elected by the voters. And there's nothing in the county code or in the County Executive Act that gives county board members the ability to select its members by appointment. So it's not an appointed board that would fall within that section of the County Executive Act. So if we have the election code specifying precisely that a vacancy in elected county office is to be filled by appointment of the county chair, then we have a vacuum with respect to the County Executive Act. There's no reason why we should not follow the provisions of the election code. Now, the county board is different than other boards that are created by statute that are completely appointed boards. For example, the county board appoints the Board of Review and the Fire Protection District Trustees and the Zoning Board of Appeal and the County Library Board and other boards. And those boards that are fully appointed, those are the boards that the county executive has the ability to appoint the members to. Now, I note that in addition to claiming that she has the ability to appoint vacancies in elected county board positions, the county executive also takes the position that she has the ability to fill all vacancies in county offices. And that is just simply not the case. There are several provisions in Division 3 of the county's code that specify that a vacancy in the county clerk and county coroner and sheriff and state's attorney and treasurer are all filled as provided by the election code, which refers to the chair. So because Section 25-11 is clear and exactly on point, and because there's nothing in the County Executive Act that gives the county executive the power to fill vacancies in elected county offices, that should just be applied as written. However, the county executive is arguing that once the county executive's section of the county's code is adopted, one, we have to disregard all the other provisions of the county's code and other statutes that refer to county board chair. Two, that once we do that, that now eliminates the position of county board chair and creates a void wherever the term county board chair is mentioned. And then third, the court must then fill this manufactured void by giving the county executive all the functions that county chairs previously exercised. Now, the problem with this... Counsel, I have a question for you. Yes, Ronna. Can you tell me the statutory basis for making a determination that a county board chair still exists once they go to the executive form of government? Certainly. First of all, there's no provision that says they do not exist. Second, though, there are statutes, for example, Section 2-1003 of the county code that requires the county board to elect a county board chairman. And there's nothing in that statute that says you elect a county board chairman in the event that there is not a county executive. So there's nothing in the executive statute that says, well, now we have to disregard Section 2-1003. Actually, it's very similar to organizational statutes that we see with respect to other units of local government. For example, school districts. School districts organize, and they have to hold an organizational meeting to elect a school board president as an organizational function. The municipal code gives municipalities the ability to structure themselves procedurally. So this Section 10-03 of the county code requires the chairman to actually still be elected, and that's to perform other functions that don't encroach upon any of the important functions of the county executive. For example, there is a provision that says that, and it's at the end of that section of the county's code, that the county chairman can prescribe oaths of office to people who are proceeding before the board. So we believe that a designation of county chair and the existence of a county executive form of government can exist harmoniously. Now... How does Section 5-2-515, that language in there about the county executive form of government and then the county chair, how does that impact our analysis? Well, I would say exactly as the appellate court ruled on that issue, that says that you cease to have a county chair elected by the voters when you adopt the county executive form of government. It does not say the counties can no longer use the term county board chair to perform other functions of county board chair that are either specified in the county's code or in other statutes such as the election code. Now, the other problem with the county executive's argument here is that when you don't have legislative history, the courts still try to determine the legislative intent. And here we don't really have legislative history, but we know that the County Executive Act was adopted in 1971 in a response to certain provisions that were included in the 1970 Constitution. Article 7, Sections 4A and 6A of the 1970 Constitution said that there wasn't a mechanism for counties to do that. So in response to that, the General Assembly adopted the County Executives Act and it was in part of something that happened going into the 1970 Constitutional Convention, which was that the Committee on Local Governments said the counties should have more flexibility in their organizational and operational structures. They should be similar to municipalities so that you don't have to have the legislative branch handling the daily operations of the county. But there's nothing at all from the recommendations going into the Constitutional Convention that say the power of the executive must include inherently the power to fill vacancies in legislative offices. And so it's just, while the county executive is saying, oh, the position of the county board is thwarting the will of the electorate in this instance, it's simply not the case because first of all, executives still perform many important valuable functions under that system of government other than the appointment to fill vacancies in the executive office. And all appointment power is not necessarily executive. So when you look, for example, at how different states throughout the nation have set up their structures with how vacancies in their state legislatures are filled, they're all across the board, 25 of them filled by special election, only 10 filled by gubernatorial appointment, a couple, three have hybrid systems. Ohio actually says that the legislative branch does the legislative vacancies. And Illinois is one of four states in the nation that actually put vacancies in the General Assembly back to the political process. So that's not to say that Governor Pritzker's executive powers are thwarted because we give the state political parties ability to fill vacancies in General Assembly. It just says in that one instance, we just have a different mechanism for filling vacancies in elective offices. And further, it's a little ironic because while the executive says that the will of the electorate is thwarted, if the executive doesn't have these powers, we actually believe that the will of the electorate is fulfilled to a greater basis if you follow the provisions of Section 25-11 of the Election Code, because that requires the county board chair to appoint a member of the existing, of the political party of the person who vacated that chair. If we are going to say that we're not applying the Election Code in this instance because there's no longer a county chair and the county executive can simply make an appointment, then those requirements of the Election Code, such as that you have to be a member of the same political party and you have to fulfill your appointment within 60 days, wouldn't apply. So we believe that the county board's position actually paints a way that all of these statutory provisions can be construed harmoniously. We believe that 25-11 is clear and there's not a conflict in the statutes. But in the event that there is a conflict in the statutes, then traditional statutory construction principles would also support the county board's position. For example, when we construe both the County Executive Act, the rest of the county's code, and the Election Code in peri materia, we try to give them a harmonious interpretation. And we are not saying that there's any other function of the county executive that a county chair would take over. We're simply saying that in this instance, the county chair possesses the ability to bring forth a recommendation to the county board when there is a vacancy in the elective office. In addition, the statutory construction principle that the specific statute controls over the more general would also come into play here. It is clearly more specific in 25-11 of the Election Code that when there's a vacancy in an elective county office, this is the procedure. The county board gives notice to the parties. The county board chair brings forth a recommendation. The appointment has to be made within 60 days. There's nothing at all in the County Executive Act or in any of the rest of the county code that addresses vacancies in elective county office. And this goes to one of the final questions that was asked to Mr. Harvey when he was up there about how did the county fill the vacancy in the county executive office. That wasn't a vacuum. There is a specific section. Section 2-5011 of the County Executive Act does say in the event that the county executive dies, that the county board makes that appointment. So there was no speculation or substitution or anything in that instance. They just applied the very precise language of what you do in the County Executive Act upon the death of the county executive. In addition, there's a statutory construction principle that statutes should be construed to avoid any observed results. And what we believe an observed result would be in the event that it is the county executive who makes this appointment instead of the county chair, is that section 5009 sub H of the county's code says that in the event that the county, I'm sorry, it says that the county executive can remove from office anybody she has the power to appoint. So that could result in a situation where, okay, if she made the appointment, she appoints a county board member to fill a vacancy. That person then votes against her budget. She has the ability to remove that person because she appointed that person. And I don't think we have a system where we would have two different types of county board members, county board members who are elected and cannot be removed except for by cause, and county board members who are elected, but if you're filling a vacancy in an elective office, you have kind of a diminished role and you're subject to really the whims of the executive to potentially remove you. So we think that would be an observed result of the ability of the county executive to make appointments in this instance. So, first of all, we believe that the statute is clear. Second of all, we believe that the executive function does not always include appointment functions. That's really the role of the General Assembly to determine how they're going to set that up. And third, we believe that if this court applies the traditional statutory construction principles, all of those support the county board's position that in the vacancy, when there's a vacancy in an elective county office, that appointment should be made by the county executive. Thank you. Any other questions? Thank you very much. Mr. Harvey? Well, speaking of ironic, and I'm not saying Will County has all the answers just because it was the sole county executive form of government until Champaign adopted theirs. Will County adopted the referendum in 1988. But, you know, in the Will County situation, it has always been the county executive that has appointed to vacancies both in countywide elective offices, such as Treasure, which both counties have vacancies in, and county board members. You can see the litany of vacancies in the amicus brief of Will County. But speaking of irony, Will County reached out in 2005, the state's attorney and the county board, to get some guidance on sort of the push and pull between the county board and the county executive. And as you know, there hasn't been litigation because, frankly, the only county executive has been the Will County county executive. And I'm not saying it's perfect, but even in 1988 when Charles Adelman was elected and immediately the county board adopted resolutions trying to take its power to propose a budget, to hire the state's attorney in that case, the state's attorney Vermilla, said to the county board, which was a majority Republican, and Adelman was a Democrat, that, you know, he's not a ribbon cutter. He's an independent executive, and he isn't just somebody who's going to go to openings and cut ribbons. He has that authority, and you can't dilute it. You can't take it away. In 2005, the state's attorney reached out to the firm of Ansel Glink and Mr. Diamond and Bush to get some guidance about this push and pull between the county executive and the county board. And they prepared a 30-page memorandum about the history of the county executive nationwide. And in that memorandum of more than 30 pages, the history of the county executive in Will County, because it was the only one, and nationwide was researched and analyzed by attorneys Diamond and Bush. And it's stated on page seven of that memorandum, and I quote, the creation of a county executive is not a slight modification of some existing form of government. The statute creating the county executive form of government in the county's code fulfills a mandate which was established by the delegates to the Illinois Constitution which drafted the provisions relating to the counties and which were adopted as part of the 1970 Constitution. In fact, the beginning of the county executive statute states, it's declared as a matter of legislative determination that in order to promote the health, safety, and welfare of the public, it's necessary and in the public interest to provide for an elected county executive form of government in accordance with section 4A and 6A of Article 7 of the 1970 Constitution. Furthermore, on page five of that memo, the Ansel Glink attorneys in 2005 stated that once you've adopted the county executive form of government, there's no longer a county board chairman. As the county executive statute provides, once that form of government is adopted, it is the county executive now who is the presiding officer over the county board meetings, has veto power, has the power to appoint with the advice and consent of the county board, and can call for special meetings of the county board. Once the Champaign County voters adopted the county executive form of government, those voters removed the executive function of county government from the county board and placed those in the hand of Darlene Kleppel, the duly elected county executive. Those same Champaign voters also subsequently, excuse me, I say that already. The moment Kleppel was elected to the county board, their powers were solely to function as the legislative branch of government. So, sort of in summing up. Why did the legislature not amend 2511 when given the opportunity after the county executive act was passed? You know, it'd be speculation, Justice Burke, but I will say that the tweaks that the legislature did, and there's like 222, were like pronouns, like chair to chairperson. You know, they could have, and they can change the statute and election code tomorrow. Probably, and again it's speculation, which I probably shouldn't do, but I will say that since it wasn't a problem in Will County, like, don't fix what's not broken. Because the county executive there has always appointed to vacant county board seats and to countywide elective seats. Specifically, you know, the treasurer, the sheriff, those seats. So it wasn't a problem in Will County. And so they didn't go to the General Assembly, I assume, to say fix it because nobody challenged it. Because we've had Democrat and Republican county executives. We've had Democrat and Republican majority county boards. We've had Democrat and Republican state's attorneys, and none of them challenged or questioned the appointive power of the duly elected county executive to fill that vacancy, or nominate to that vacancy, and the county board confirmed. Since the legislature elected not to amend the election code, is there any reason why we shouldn't follow it? They've had an opportunity to correct the problem that you've been discussing with us this morning, but they didn't. Well, because I guess in Will County it hasn't been a problem because they've said the county executive has that authority. And, frankly, the state's attorney, with the guidance of outside counsel, has either interpreted that section, and I know it's an interpretation, and you're not legislature, you're the judiciary, as presiding. The language isn't ambiguous in the election. No, but if there's not a – what do you do if it's articulated here and followed in Will County for 34 years? If they view, once you adopt the county executive form of government, that there's no more chair, that statute can't be read to say, oh, some nonexistent person now has power. Because, you know, under how Will County's operated, you know, continuously, based on all the advice that's given from its state's attorney and its outside counsel, it says simply, there is no county chair after you adopt the county executive form of government, so how can the election code apply when it talks about the chair? Because the chair applies in all the other 100 counties, but not in Will and Champaign County, I would submit. And that's what I find interesting is the election code even provides, except as otherwise provided by county ordinance or by law, that is until there's been some kind of amendment or correction, then the county board has the power to fill elective offices. But they provide that that can be changed. It hasn't been. And I would just submit, Justice Neville, that you have to read it as Justice Baum did, in conjunction with the county executive statute, which is a later statute. The county's code has been here since, I think, the late 1800s. And I will submit to you it's not perfect. It wouldn't be here if it read, you know, harmoniously. And I would just submit that, you know, you interpret statutes, you interpret ordinances, you interpret regulations every day. And, you know, I just have to say that, and that's why we're here, that I agree with, I mean, it isn't whether I agree, but the county executive obviously agrees with the analysis and decision of Judge Baum back in the. . . Mr. Harvey, your time is up. Thank you. You can finish your statement. Okay. Basically, in summary, we feel that the county executive should be appointed to those offices. And if the folks who control the current Champaign County vote don't want to respect that, then they should do what Judge Baum articulated in his closing summary judgment order and file your petitions and repeal the county executive form of government, which is allowed under law. Thank you very much. Thank you. Case number 127997, Darlene Klafel versus the Champaign County Board, will be taken under advisement by this court as agenda number 18. I want to thank you, Mr. Harvey, and I'd like to also thank you, Carrie Lynn Craftser, for your arguments this morning.